TQM

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DURCY CAMACHO, | ) |
| Plaintiff, | ) Civil Action No. 13 CV 3891 |
| v. | ) Hon. Charles R. Norgle |
| GYNECOLOGIC SPECIALISTS OF NORTHWESTERN, S.C., | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Charles R. Norgle, United States District Judge

Plaintiff Durcy Camacho ("Plaintiff") was terminated by her employer, Defendant Gynecologic Specialists of Northwestern, S.C. ("Defendant"), while taking an approved medical leave of absence due to the birth of her daughter. After exhausting her administrative remedies, she received a Right to Sue Letter from the Equal Employment Opportunity Commission on May 15, 2013. Nine days later, Plaintiff filed a complaint alleging that Defendant unlawfully discriminated against her on the basis of her pregnancy, race, and/or gender—putative violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and supplemental Illinois statutes. Before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims. For the following reasons, Defendant's motion is granted in part and denied in part.

## I. BACKGROUND[1]

Defendant is a gynecological and obstetrics practice that, during 2010 and 2011, was owned by three female doctors—Drs. Snow, Streicher, and Blumenthal. Plaintiff, a Hispanic

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts, if any, within the text.

female, started working for Defendant in July of 2006 as a medical records clerk. Plaintiff remained in her position as a medical records clerk until Defendant terminated her employment on April 15, 2011, three weeks after the birth of her daughter. When Plaintiff's employment ended, Defendant employed between twenty and twenty-five employees, twenty of whom were female and four of whom were Hispanic.

Throughout the time that Plaintiff worked for Defendant, there had been an ebb and flow of the number of people employed by Defendant, particularly at the medical records clerk position. In September of 2008, Defendant closed its obstetrics practice and the number of treating doctors fell from eight to three; Defendant decided to downsize its medical records staff as a result. Defendant terminated Tamara White's employment, an African-American female who was never pregnant while she worked for Defendant. That employment decision left two records clerks, Plaintiff and Ketlyne Guillaume. Defendant downsized again in January 2009, eliminating Ms. Guillaume's position; Mrs. Guillaume was not Hispanic but had taken pregnancy-related medical leave in 2006. The reduction in staff left Plaintiff as the sole medical records clerk. During her time as the sole medical records clerk, Plaintiff complained to Jeff Rekett, the Practice Manager for Defendant, about being overwhelmed with work. Plaintiff worked as the only medical records clerk until November 2009, when Defendant hired Jessie Brett and Angela Pasha, both Caucasian women, as part-time medical records clerks. Ms. Brett stopped working for Defendant on May 27, 2010, leaving Ms. Pasha and Plaintiff as the only two medical records clerks.

Between 2006 and October 2010, Defendant evaluated Plaintiff's work performance five times, in which her performance appeared satisfactory overall and she continued to receive modest pay increases. Defendant states that Mr. Rekett received a complaint from Ms. Pasha on

December 22, 2010, that Plaintiff was not productive enough, effectively shifting extra job duties to Ms. Pasha. When Mr. Rekett shared the complaint with Dr. Snow, she relayed that she had heard a similar complaint about Plaintiff from another employee. Defendant contends that Plaintiff's work performance had been questioned and scrutinized by Plaintiff's supervisors since 2009.

Defendant does not have a written maternity leave policy that it provides or publishes to its employees. However, it is evident that Defendant has a standard policy of allowing employees six weeks off maternity leave and will extend an employee's time off if it is medically necessary. Defendant previously provided maternity leave to four women other than Plaintiff—Ms. Guillaume, Beth Byrd, Mariana Pehar, and Nicole Carbonara. Ms. Guillaume took four and a half weeks of leave in 2006, Ms. Byrd took six weeks of leave in 2006, Ms. Pehar took twelve weeks of leave in 2008 because she had medical complications related to the birth of her twins, and Ms. Carbonara took six weeks of leave in 2009. Defendant terminated Ms. Carbonara's employment at the end of her approved six-week leave on December 15, 2009, because she did not return to work after she asked for—but did not receive—additional time off.

Plaintiff was pregnant several times during her employment with Defendant. In 2008, she was pregnant with twins, but she miscarried. In 2009, she requested and received time off for her pregnancy; however, the second pregnancy also resulted in a miscarriage. Between March and November of 2009, Plaintiff did not go to work for medical reasons on twenty-eight occasions.

Sometime in the summer of 2010, Plaintiff informed Defendant that she had become pregnant for the third time. Medical complications related to her pregnancy began shortly thereafter. She took off work from August 10th through 17th pursuant to a doctor's order because she was having abnormal bleeding. Upon her return to work, her doctor did not impose

any pregnancy-related work restrictions. Plaintiff remembers Mr. Rekett telling her in August of 2010 that she could not leave work to attend future doctor's appointments; she had to schedule the appointments outside of work hours. However, Plaintiff did not follow Mr. Rekett's directive and continued to attend her doctor appointments during work hours. Other than being admonished by Mr. Rekett, Plaintiff was not disciplined for attending doctor appointments during work hours.

Plaintiff visited her doctor on December 24, 2010, because she noticed abnormal bleeding again. After the appointment, she received written instructions from her nurse that she could resume a normal amount of activity. Around the same time of the doctor's visit, Plaintiff asked Mr. Rekett if she could be assigned to light duty work, meaning that she would no longer have to climb a ladder to access medical records or collect the medical records from the treating doctor's offices. For example, she asked to no longer pick up heavy files from the floor of Dr. Streicher's office. In addition, Plaintiff had access to a push cart so that she did not have to carry the files from place to place, but she had to lift them on her own. Mr. Rekett asserts that he modified Plaintiff's duties accordingly, but Plaintiff contends that her requested accommodations were not honored. Defendant asserts that it has not provided light duty assignments to any of its employees because these duties are essential job functions for medical records clerks.

On January 8, 2011, Plaintiff told Mr. Rekett of her intent to take a medical leave of absence after the birth of her child, expected to be April 3, 2011. At that time, Mr. Rekett informed Plaintiff of Defendant's policy to "allow six weeks off work for the birth of a child." Def.'s Local Rule 56.1(a)(3) Statement Undisputed Material Facts Supp. Mot. Summ. J. ¶ 40. Plaintiff then had complications with her pregnancy, which required her to remain on bedrest

until delivery; she provided the doctor's note requiring such to Defendant on January 28, 2011. Defendant granted Plaintiff's request for the needed bedrest.

In February, a few weeks after Plaintiff went on bedrest, Mr. Rekett called Plaintiff and told her that she would be responsible for paying the portion of insurance premiums that were being paid by Defendant, roughly $500 per month. Mr. Rekett and Plaintiff also discussed whether Plaintiff could acquire alternative health insurance; such as, being added to her husband's health insurance policy. Plaintiff could not find alternative health insurance options and could not pay Defendant's portion of the health insurance premiums. Defendant continued to pay Plaintiff's health insurance premiums until the end of April, the month she was terminated. Plaintiff gave birth to her daughter on March 25, 2011, and thereafter began her maternity leave pursuant to Defendant's policy.

Meanwhile, in Plaintiff's absence, Mr. Rekett and Dr. Snow observed that Ms. Pasha could handle the medical records duties as the sole clerk. Around February 2011, Defendant decided to promote Ms. Pasha to a receptionist position and hire a replacement medical records clerk. On March 1, 2011, Defendant hired Darcee Kingsley as a medical records clerk. Pleased with Ms. Kingsley's work, Dr. Snow decided that Defendant only needed one medical records clerk. With the agreement of the other two owners, Defendant terminated Plaintiff's employment on April 15, 2011. To effect the termination, Mr. Rekett called Plaintiff and told her that Defendant was "'down-sizing'" and it had "eliminated one position"—hers. Def.'s Resp. to Pl.'s Additional Facts ¶ 31. Since then, Defendant hired another treating doctor in January of 2012, and because of the addition, it hired an additional medical records clerk as well.

## II. DISCUSSION

### A. Standard of Decision

At the summary judgment stage, the Court views the record in the light most favorable to the nonmoving party and construes all reasonable inferences in her favor. Hart v. Mannina, 798 F.3d 578, 584 (7th Cir. 2015) (citation omitted). "[A] court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "Summary judgment is appropriate only where there are no genuine issues of material fact and the moving part[y is] entitled to judgment as a matter of law." Hart, 798 F.3d at 584 (citing Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). Specifically in a Title VII case, such as this, "[s]ummary judgment for the defendant is appropriate if the plaintiff fails to carry [her] burden to establish a prima facie case or is unable to show a genuine dispute about whether the neutral reason advanced by the employer was merely pretextual." Smith v. Chi. Transit Auth., 806 F.3d 900, 904 (7th Cir. 2015).

### B. The Merits of Defendants' Motion for Summary Judgment

Defendant moves for summary judgment in its favor on all counts in Plaintiff's Complaint, arguing that Plaintiff fails to sufficiently show that Defendant illegally discriminated against her. Plaintiff avers that genuine issues of material fact preclude summary judgment and that her discrimination claims should be left for a jury to decide. In attacking summary judgment, Plaintiff conflates her six legal claims into a single argument; contending that: "Under either the

direct or indirect method of proof, several questions of material fact prohibit [Defendant] from proving as a matter of law that [Defendant] did not discriminate against [her] based upon her race, pregnancy, and/or sex." Pl.'s Durcy Camacho's Resp. Opp. Def. Gynecologic Specialists of Northwestern, S.C.'s Mot. Summ. J. 2 [hereinafter "Pl.'s Resp."]. However, Plaintiff disregards the intricate analysis required in Title VII cases and distorts the burden of proof at the summary judgment stage of litigation. While the facts are construed in her favor, the burden to establish a prima facie case remains her burden.

Title VII makes it unlawful for employers to discriminate against an employee "because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000(e)-2(a)(1). There are two ways that a plaintiff can show a claim of employment discrimination under Title VII and survive a motion for summary judgment, utilizing either the "direct" or "indirect" method of proof. Smith v. Chicago Transit Authority, 806 F.3d 900, 904 (7th Cir. 2015).

Under the direct method, a plaintiff can present two types of evidence. Id. One type of evidence is direct evidence—evidence of the employer's discriminatory intent; such as, "an explicit admission by the employer that a particular decision was motivated by discrimination." Diaz v. Kraft Foods Global, Inc., 653 F.3d 582, 587 (7th Cir. 2011). There is no direct evidence in this case because Plaintiff has not submitted evidence of a discriminatory statement made by anyone employed by Defendant. Cf. Maldonado v. U.S. Bank, 186 F.3d 759, 766 (7th Cir. 1999) (finding direct evidence of discrimination because the defendant told the plaintiff, who was pregnant, that she was fired "'due to [her] condition'"). The absence of direct evidence is not unusual because it rarely exists. See Diaz, 653 F.3d at 587.

The second type of evidence in the direct method context is circumstantial evidence. Circumstantial evidence is basically anything else "'that point[s] directly to a discriminatory

7

reason for the employer's action.'" Smith, 806 F.3d at 905 (quoting Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 783 (7th Cir. 2004)). Relevant examples of "circumstantial evidence include 'suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group.'" Smith, 806 F.3d at 905 (quoting Good v. Univ. of Chi. Med. Ctr., 673 F.3d 670, 675 (7th Cir. 2012)). What constitutes a sufficient amount of circumstantial evidence to survive summary judgment has been labeled a "convincing mosaic," Smith, 806 F.3d at 905, or described as "a longer chain of inferences," Diaz, 653 F.3d at 587. As discussed *infra*, Plaintiff refers to several instances of circumstantial evidence to argue that Defendant illegally discriminated against her.

Because the direct method of proof is not mutually exclusive, a plaintiff can also defeat a summary judgment motion by using the indirect method of proof as promulgated in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Smith, 806 F.3d at 905; see also Orton-Bell v. Indiana, 759 F.3d 768, 773 (7th Cir. 2014) ("While all relevant direct *and* circumstantial evidence is considered (in its 'totality') in *both* methods, we do indeed consider the 'direct' and 'indirect' methods separately when reviewing summary judgment because we are not authorized to abjure a framework that the Supreme Court has established."). Under the McDonnell Douglas framework, a plaintiff must establish his or her prima facie case, then the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action, and finally plaintiff may rebut the employer's reason as pretext—"'a phony reason for some action.'" Smith, 806 F.3d at 905 (quoting Wolf v. Buss (Am.) Inc., 77 F.3d 914, 919 (7th Cir. 1996)). No matter how a plaintiff presents the employment discrimination claim, "'the continued focus [is] on whether the plaintiff has introduced sufficient evidence to give rise to an inference

8

of intentional discrimination.'" Smith, 806 F.3d at 905 (quoting Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1355 (2015)).

### *1. Evidence of Defendant's discrimination based upon Plaintiff's pregnancy, childbirth or related medical conditions*

"Congress amended Title VII in 1978 to explicitly extend protection to pregnant women: '[w]omen affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes…as other persons not so affected but similar in their ability or inability to work….'" Maldonado, 186 F.3d at 762 (citing 42 U.S.C. § 2000e(k)). "To prevail on a pregnancy discrimination claim, a plaintiff 'must show that she was treated differently because of her pregnancy.'" Id. at 763 (quoting Geier v. Medtronic, Inc., 99 F.3d 238, 241 (7th Cir. 1996)). And as summarized *supra*, circumstantial evidence of discrimination can be shown in three ways:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

Darchak v. City of Chicago Bd. of Educ., 580 F.3d 622, 631 (7th Cir. 2009). The third type of circumstantial evidence is most applicable in this case.

Viewing the evidence in the light most favorable to Plaintiff, as the Court must do in reviewing a summary judgment motion, the Court finds that Plaintiff was qualified for the medical records clerk position—she had worked for Defendant for almost five years and continued to receive pay increases during that time. While Plaintiff was out on an approved medical leave, Defendant effectively replaced her with Ms. Kingsley, who was not pregnant and outside of the protected class. Defendant's characterization of "down-sizing"—promoting Ms.

9

Pasha to receptionist, filling Ms. Pasha's position with Ms. Kingsley, and eliminating Plaintiff's position—could be considered by a reasonable jury as pretext for its unlawful discriminatory intentions. Further emphasizing the possibility that Defendant's downsizing explanation was pretext is the phone call that Plaintiff received from Mr. Reckett, during which he demanded that she begin paying Defendant's portion of her health insurance premiums while she was on leave. Additionally, there was not a decrease in treating doctors to precipitate the reduction in staff like there had been in the past. Moreover, Defendant terminated Plaintiff only three weeks into her post-delivery medical leave, which, by Defendant's own policy, was supposed to extend for six weeks. Therefore, a reasonable jury could find circumstantial evidence showing that Defendant treated Plaintiff differently because she was "affected by pregnancy, childbirth or related medical conditions." 42 U.S.C. § 2000e(k). Because the Court finds that there is sufficient circumstantial evidence to support Plaintiff's Count III—being unlawfully terminated on the basis of pregnancy, childbirth or related medical conditions—it does not reach an analysis under the indirect method of proof. See Paz v. Wauconda Healthcare & Rehab. Ctr., 464 F.3d 659 (7th Cir. 2006) (remanding to district court after finding sufficient evidence under direct method of proof and not reaching analysis under the indirect method of proof).

### 2. Plaintiff's race and gender claims

Regarding Plaintiff's claim that she was unlawfully discriminated against because she is Hispanic or because she is a woman, the evidence under either the direct or indirect methods of proof is much less convincing. In its trilogy of opinions discussing the summary judgment standard, the Supreme Court held that the onus is on the non-moving party to produce admissible evidence to demonstrate a genuine issue of material fact, <u>not</u> on the moving party to give evidence that there is no factual dispute. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 588 (1986) (requiring non-moving party to produce positive evidence of an essential element of the claim to survive summary judgment); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Or, as the Seventh Circuit succinctly stated, "summary judgment is the 'put up or shut up' moment in a lawsuit." See Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010).

In the introduction of her Response, Plaintiff argues, *inter alia*, that she was paid less than the other Caucasian medical records clerks who were hired after her and that the junior clerks remained employed after Plaintiff was terminated. However, the remainder of her brief does not return to these two factual contentions to explain how these two facts, if true, lead to the conclusion that she was discriminated against on the basis of race or gender. "[I]t is not the province of the courts to complete litigants' thoughts for them, and [courts] will not address [] underdeveloped arguments." White Eagle Co-Op Ass'n v. Conner, 553 F.3d 467, 476 n.6 (7th Cir. 2009); see also Paulcheck v. Union Pac. R. Co., Case No. 09 CV 4226, 2010 WL 1727856 *1 (N.D. Ill. Apr. 29, 2010) (collecting cases) (finding "that it is not for the court to make arguments for a party, and that skeletal and unsupported arguments are deemed waived.") Therefore, the Court finds that Plaintiff fails to meet her burden of establishing a prima facie case under the direct method of proof.

To support an indirect method of proof, Plaintiff—in a similarly undeveloped fashion—concludes that she "has established all four elements for establishing a prima facie case of race, sex and pregnancy discrimination"; but she does not cite to any factual support in the record for that conclusion. Pl.'s Resp. 11. Instead, she surmises that "the record is rife with evidence showing that similarly situated non-Hispanic, non-pregnant employees received favorable treatment – *i.e., kept their employment and/or was* promoted, while [Plaintiff] lost her employment." Id. While it is true that Ms. Pasha and Ms. Kingsley remained employed with Defendant beyond the date that Plaintiff was terminated, such a conclusory remark is not enough to establish a prima facie case for unlawful discrimination under the indirect method of proof. Because Plaintiff has not produced any argument to show what evidence supports the essential elements of her race or gender discrimination claims, the Court grants summary judgment to Defendant on Counts I and V.

### *3. Plaintiff's state law claims under the Illinois Human Rights Act.*

Plaintiff has not argued that she has presented sufficient evidence to succeed under the supplemental state law claims. In a footnote, Plaintiff states, "As [Defendant] noted, given the high similarity of the intent and construction of Title VII and the IHRA, the use of Title VII case law is appropriate to analyze discrimination under both." Pl.'s Resp. 14 n. 11. Plaintiff does not indicate where Defendant noted this proposition and her response is absent any legal support for her assumption. Plaintiff's response is devoid of any citation to the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/2-101 *et seq.*, citation to a case from the Illinois courts interpreting the Act, or citation to a Seventh Circuit or District Court case interpreting the Act. The Court will not formulate a prima facie case on these state law claims on her behalf. See White Eagle Co-Op Ass'n, 553 F.3d at 476 n.6. Therefore, the Court deems Plaintiff's state law claims are waived

and insufficient to defeat Defendant's motion for summary judgment. Accordingly, summary judgment on Counts II, IV, and VI is entered in favor of Defendant.

### III. CONCLUSION

The Court finds that sufficient circumstantial evidence exists such that a reasonable jury could return a verdict favorable to Plaintiff on Count III of her Complaint. Therefore, Defendant's motion for summary judgment on Count III is denied. As to the remaining Counts in Plaintiff's Complaint, Plaintiff failed to present an argument sufficient to show that she has met her burden of establishing a prima facie claim. Therefore, Defendant's motion for summary judgment is granted on the remaining counts. Accordingly, Defendant's summary judgment motion is granted in part and denied in part.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 25, 2016